**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LONDON
CRIMINAL ACTION NO. 07-13-DCR-JGW**

**UNITED STATES OF AMERICA**                                                              **PLAINTIFF**

**v.**

**GEORGE A. CLARK**                                                                            **DEFENDANT**

**REPORT AND RECOMMENDATION**

Before the Court is a *pro se* petition for a writ of habeas corpus, submitted as a motion to vacate pursuant to 28 U.S.C. § 2255.  Doc. 364.  The government filed a response urging that the motion be denied, and petitioner filed a reply brief.  Doc. 391, 397.  The motion is now ripe for decision.  After considering the record and applicable law, the Court recommends it be denied.

**I. Facts and Procedural Background**

On May 30, 2008, petitioner was convicted by a jury of multiple crimes and multiple counts: one count of conspiracy to obstruct commerce under 18 U.S.C. § 1951; seven counts of attempt to possess with intent to distribute schedule II, III, and IV controlled substances under 21 U.S.C. § 846; seven counts of brandishing a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A); four counts of possession of firearms by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(e)(1); and two counts of possession of a forged certificate of discharge (form DD_214) from military service of the United States under 18 U.S.C. § 498. Doc. 290.  On September 16, 2008, the Court sentenced petitioner to a total of 2,269 months, with five years of supervised release thereafter.  *Id*.  Petitioner appealed his convictions on

September 24, 2008, which the Sixth Circuit Court of Appeals affirmed on March 24, 2011. Docs. 291, 349. Petitioner filed his § 2255 motion on April 9, 2012, and the government responded in opposition on November 5, 2012. Docs. 364, 391.

Petitioner asserts that he was the victim of ineffective assistance of counsel at both the trial and appellate levels. He cites five separate instances of ineffectiveness: (1) that counsel failed to bring to the Court's attention the variance between the indictment and the jury instructions; (2) that counsel failed to call an alibi witness; (3) that counsel allowed the prosecution to offer false testimony through a government witness; (4) that counsel failed to obtain exculpatory evidence; and (5) that counsel allowed the government to submit to the jury false phone records that allegedly connected petitioner to the robberies charged in the indictment. Doc. 364. The third and fifth instances are also alleged to have deprived him of his due process rights. Respondent argues that the motion to vacate should be denied because petitioner has failed to show that his counsel was constitutionally ineffective or that he was denied due process.

## II. Legal Framework

28 U.S.C. §2255(a) provides, in relevant part, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." To prevail on a § 2255 motion, the movant must allege as a basis for relief: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States,*

268 F.3d 346, 351 (6th Cir. 2001). As stated, petitioner alleges two errors of constitutional magnitude: ineffective assistance of counsel under the Sixth Amendment and denial of due process under the Fifth Amendment.

### a. Ineffective Assistance of Counsel

When "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," a criminal defendant's Sixth Amendment rights have been violated. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). *Strickland*, the seminal case in this field, creates a two-pronged test petitioner must satisfy to prevail on any of his ineffective assistance of counsel claims. First, petitioner must show that the counsel's performance was deficient. Second, petitioner must establish that his attorney's ineffectiveness "prejudiced the defense." *Strickland* at 687. As the Sixth Circuit put it, "to prevail on a claim of ineffective assistance of counsel, a petitioner 'must demonstrate that counsel's representation fell below an objective standard of reasonableness and that the petitioner was prejudiced by the ineffective assistance of counsel." *Jackson v. Bradshaw*, 681 F.3d 753, 760 (6th Cir. 2012) (quoting *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000)).

To meet the first requirement, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The Supreme Court enunciated an objective standard for counsel's performance, that of "reasonably effective assistance." *Id*. However, the Court cautioned that, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*.

(quotations omitted).

To satisfy the second prong, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. "When deciding whether counsel's errors prejudiced a defendant, the Court 'must consider the totality of the evidence before the jury' on the assumption that 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Jackson*, 681 F.3d at 761 (quoting *Strickland*, 466 U.S. at 695). "Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

### b.  Denial of Due Process - False Testimony

"The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *U.S. v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). To set aside a conviction on these grounds, petitioner must prove three elements: (1) that the statement at issue was actually false; (2) that the statement was material; and (3) that the prosecution knew the statement was false. *U.S. v. Maga*, 475 Fed. Appx. 538, 546 (6th Cir. 2012). It is petitioner's burden "to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Lochmondy*, 890 F.2d at 822

(citation omitted).

### III.  Analysis

As stated, petitioner alleges five separate instances of his attorney(s)'s ineffective assistance and two instances of denial of his due process rights.  Each will be discussed in turn.

#### a.  General Jury Instruction

Petitioner's first claim is that his trial attorney allowed the Court to use improper jury instructions for his charge under 18 U.S.C. § 924(c), a statute that provides additional penalties for using or carrying a firearm during a crime of violence or drug trafficking.  Petitioner also alleges that his appellate counsel was constitutionally ineffective for failing to raise the issue on appeal.  He argues that, "[t]he jury instructions create a set of circumstances, any of which could constitute a violation of 18 U.S.C. 924(c), but utterly fail to adequately identify the specific elements of each individual charge in Clark's indictment."  doc. 397 at 4.  Petitioner maintains that this alleged lack of specificity "created the impression that if any of the elements are satisfied, then conviction is appropriate for each count.  Instead, the instructions should have clearly explained that each charge of a §924(c) violation needed an underlying offense of drug trafficking or violent crime."  *Id*.

Petitioner's argument is unavailing.  First, the fact that the jury instructions (Doc. 247) in this case hewed closely to - indeed, almost mirrored - the pattern jury instructions issued by the Sixth Circuit supports their validity.  Sixth Circuit Pattern Jury Instructions, § 12.02; *U.S. v. Damra*, 621 F.3d 474, 499-500 (6th Cir. 2010).  More specifically, contrary to petitioner's claims, the jury instructions clearly state that each of the various counts under 18 U.S.C. § 924(c)

5

correspond to a count of drug trafficking under 21 U.S.C. § 846.[1]  Because the District Court's jury instructions were entirely appropriate, it cannot be said that petitioner's trial counsel's failure to object constituted ineffective assistance of counsel; nor does his appellate attorney's failure to raise the issue on appeal render his counsel constitutionally ineffective.  Petitioner fails both prongs of the test and his first claim should be denied.

### b.  Failure to Call Alibi Witness

Petitioner's second claim is that his trial counsel was ineffective for failing to call an alibi witness, Tina Garrison, at trial.  Petitioner alleges that on August 18, 2006, Garrison filed a criminal complaint alleging he made terroristic threats against her and was menacing.  Doc. 364 at 5; Ex. C.  Because the jury found petitioner guilty of committing various crimes on that date, petitioner believes Garrison's testimony would have revealed that he was some forty miles away from the scene of the robbery he was convicted of committing, thereby exonerating him of that and other crimes.  *Id*., Brief at 8-9.  His trial attorney's failure to call Garrison at trial, petitioner argues, was ineffective assistance of counsel.

In his defense, petitioner's trial counsel submitted an affidavit swearing he served

---

[1]The Jury Instructions state, in pertinent part:
(3)　　In order to find the Defendant guilty of one or more of these counts, you must find the following elements beyond a reasonable doubt:
　　(A)　　First, that the Defendant committed one or more of the drug trafficking crimes charged in Counts 2, 4, 6, 8, 10, 12, and 14 of the Indictment (Count 3 corresponds with Count 2, Count 5 corresponds with Count 4, Count 7 corresponds with Count 6, Count 9 corresponds with Count 8, Count 11 corresponds with Count 10, Count 13 corresponds with Count 12 and Count 15 corresponds with Count 14; and
　　(B)　　Second, that the Defendant knowingly used, carried, brandished and/or discharged a firearm during and in relation to the commission of the drug trafficking crimes.

Garrison a subpoena, producing a witness fee he negotiated with Garrison for the cost of her travel.  Doc. 391, Ex. A.  Counsel states that before the trial began, Garrison informed him that she would not appear, in spite of the subpoena.  *Id*.  The government argues that trial counsel was diligent in attempting to secure petitioner's alibi witness and that her choice not to appear does not amount to ineffective assistance of counsel.  Doc. 391 at 6.

Petitioner's second argument should also fail.  Petitioner has not met his burden of showing that his attorney's performance in this instance fell below the objective standard required.  Plaintiff's counsel has submitted some proof that he diligently attempted to secure Garrison as an alibi witness and petitioner has not controverted his statement that it was Garrison herself who chose not to testify on petitioner's behalf.  Furthermore, even assuming for the sake of argument that petitioner met this first prong, petitioner is still unable to prove that there is a reasonable probability that, but for his attorney's alleged ineffectiveness, the result would have been different.  Evidence of petitioner's guilt regarding all counts alleging crimes committed on August 18, 2006, was overwhelming.  More importantly, petitioner's alleged alibi is quite weak.  Garrison's alleged testimony would only serve to paint petitioner as unsavory, threatening her with bodily harm.  Moreover, the criminal complaint was made approximately a month-and-a-half after the date in question, which casts doubt on the accuracy Garrison's remembrance, and particularly so when compared to the substantial evidence pointing to petitioner's guilt.  In short, petitioner's second claim should be denied.

### c.  Allowing the Government to Present False Testimony

Petitioner's third claim is that the testimony of cooperating witnesses James Bowling and Jeremy Brashear was false, resulting in two constitutional errors: the government's presentation

7

of it constituted a denial of his due process and his attorney's error in allowing it to be presented constituted ineffective assistance of counsel. Doc. 364, Brief at 12. Petitioner asserts that Bowling lied when he stated he did not know that he was under investigation for selling drugs or that an informant was sent to purchase drugs from him. *Id.*, citing testimony at Doc. 311 at 110-111. Petitioner argues that prior to his testimony, Bowling was informed of the police-led drug buy in question and thus had to know at the time of his testimony that he had been under investigation. *Id*.

Petitioner fails all three prongs of the test for a due process violation. First, the statements are not "indisputably false" or "actually perjured."[2] *Lochmondy*, 890 F.2d at 823, 822. Second, even if the statements were clearly false, petitioner has not shown that they were material or important. He seems to argue that the testimony tended to downplay Bowling's own criminal behavior, which, had they been more informed of, the jury would have found him to be uncredible. Doc. 364, Brief at 14. Not only is this a speculative leap, it is a peripheral issue and does not affect the remaining overwhelming evidence of petitioner's guilt. Finally, petitioner

---

[2]The relevant colloquy between the Assistant United States Attorney and Bowling is as follows:
- Q  And you now know that you were under investigation for your drug selling before then, don't you?
- A  I didn't know.
- Q  Do you know now?
- A  No.
- Q  Did you know that UNITE had sent an informant in there to make a recorded by from you?
- A  No.
- Q  Never heard anything about that before just now?
- A  Well, I was suspicious, but I didn't know for sure.

Doc. 311 at 110-111. It is simply unclear whether Bowling's statements are false, whether he misunderstands the questions, or whether several other susceptible interpretations are accurate.

has not shown that the prosecutor knew the testimony was false.

Petitioner's argument that his attorney's failure to stop Bowling's testimony from entering the record constitutes ineffective assistance of counsel is also unavailing. Because the testimony was not material, his attorney may not have objected simply as trial strategy. In any event, petitioner has not shown that allowing this testimony was a serious error that affected the outcome of the trial.

Petitioner's argument regarding Brashear's testimony is even more lacking. Petitioner alleges that Brashear testified falsely regarding the search for weapons on petitioner's property.[3] Doc. 364, Brief at 16-17. The testimony petitioner points to is not an absolute falsehood, as he merely recounts his memory of the search and in fact qualifies his statements multiple times.

---

[3]The relevant exchange between Broshear and the prosecutor is as follows:
Q    Now, before the police found the guns on this mountain, you actually were taken out of the jail with the police to go up there and look, weren't you?
A    Uh-huh.
Q    And so today when you saw these photographs, you say, yeah, I recognize that.
A    The logs?
Q    Yeah.
A    Yeah, I thought so. I think so. I'm not a hundred percent sure.
Q    But you couldn't –
A    It could be any logs, you know.
Q    But you couldn't find them up there that day, could you?
A    We weren't allowed on his property.
Q    Weren't allowed on his property?
A    Right, on Diedre Clark's property. We had to go above the property line. I don't think they had a warrant for the property that day.
Q    Do you think that you went up there where the guns were?
A    We were above where the guns were.
Q    Did you tell the police that that day?
A    Yes.
Q    Okay. And they still went up there anyway?
A    Yes.
Doc. 311 at 37-38

9

Furthermore, petitioner has neither shown why the statements are material, nor why they are consequential to the outcome of the case.

Therefore, petitioner's due process rights were not denied when the testimony in question was entered and his attorney was not constitutionally ineffective for failing to object to its admission. Petitioner's third claim should fail.

### d. Failure to Obtain Exculpatory Evidence

In petitioner's fourth claim he asserts that his attorney failed to obtain exculpatory evidence and/or investigate an alternative theory of the case, which constituted ineffective assistance of counsel. Petitioner alleges that his attorney did not investigate two suspects in the robberies, Stacy Bo Medlin and Josh Wilson. Had his attorney implicated Medlin and/or Wilson, petitioner argues, it could have given the jury reasonable doubt as to petitioner's guilt. Doc. 364, Brief at 19. He also appears to allege that the prosecution did not turn over exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *Id.* at 20.

Petitioner's fourth claim barely makes sense. He first asserts that there was wiretap evidence of Medlin speaking on the phone while the robbery was taking place. As the government points out in its brief, this is factually wrong and contradicted by the record. Indeed, petitioner's own lawyer makes this clear on cross examination of the DEA intelligence analyst who testified about the wiretap on Medlin's phone.[4] Petitioner simply appears to misunderstand

---

[4] Anne Meade testified on direct examination from the prosecution that on August 18, 2006, Medlin mentioned on the wiretap the robbery that occurred on that same date. Doc. 307 at 17. To wit:
    Q    Pursuant to that investigation, were conversations or a conversation monitored from Mr. Medlin that mentioned the word robbery?

the testimony. His arguments that such wiretap information should have been turned over to him under *Brady* and that his attorney should have obtained this evidence are borne out of this misunderstanding and should be denied.

Petitioner also argues that his attorney failed to investigate Josh Wilson as a potential guilty party to the robbery. Doc. 364, Brief at 22. Petitioner makes several arguments on this issue. Petitioner argues that the government did not provide him with exculpatory evidence regarding Wilson's alleged participation in the robbery. *Id.* at 25. The Court, however, is at a loss as to what evidence petitioner is referring to. Petitioner cites testimony of a Kentucky State police officer during a preliminary hearing. Under questioning by defense counsel, the police officer stated that Wilson had no knowledge of the alleged home invasions for which petitioner was found guilty. The witness goes on to state that while Wilson did not directly implicate petitioner in the home invasions, "[i]n a way he did . . . [h]e provided additional information that I believe corroborated some of the things that I already knew." Petitioner's counsel replied, "I'm going to leave that alone." Doc. 194 at 62-63. Regarding this testimony, petitioner writes,

---

      A      Yes, it mentioned a break-in to their house.
      Q      Okay. About what date was that please?
      A      August 18th, 2006.
      Q      And approximately what time was that?
      A      Approximately 9:00 p.m.

Petitioner's theory that Medlin was speaking on a wiretap while the robbery was taking place may seem plausible from these questions and answers. However, petitioner's attorney conducts a short cross-examination which resolves the matter entirely:

      Q      Just to clear this up from me, 9:00 p.m. is when the phone call took place that you're talking about?
      A      Yes, yes, the phone call.
      Q      Not when the robbery took place?
      A      No.

*Id.* at 18.

"[h]ere you have evidence of an accomplice that actually participated in at least one robbery and was involved in two more. Yet this information, or it's [sic] foundation was not furnished to counsel upon request." *Id*. It is entirely unclear what evidence petitioner speaks of. The only evidence discussed is Wilson's own statements. To the extent petitioner believes some *Brady* material was not provided, he has failed to identify it. To the extent petitioner believes his attorney was constitutionally ineffective for failing to flesh out Wilson's involvement, he has not met his burden of showing that such counsel fell below an objective standard or that it prejudiced him at all. His fourth claim should fail.

### e.  Failure to Object to False Telephone Records

Petitioner's final claim derives from his assertion that the prosecution introduced false evidence in the form of petitioner's alleged phone records. Petitioner asserts that the phone records were never linked to him. He argues that his due process rights were violated when the jury considered them, and that he was subjected to ineffective assistance of counsel when his trial attorney failed to object to their introduction and when his appellate counsel failed to raise the issue on appeal. Doc. 364, Brief at 26-27.

Petitioner maintains that the jury was provided with a list of phone calls allegedly made between petitioner and Brashear. Petitioner claims that the affidavit from the phone company representative attesting to the records reveals that the phone belongs to an address that is not his and that he was not otherwise shown to be associated with the phone number. *Id*. at 27. He maintains he told his attorney that the number was not his, yet his trial attorney did nothing to prevent it from being admitted as evidence, and his appellate attorney failed to raise the issue on appeal.

12

Once again, the record contradicts petitioner's argument. As the government points out, the prosecution's witness, Agent Baker, stated that it was petitioner himself who revealed that the phone number in question was his own. Doc. 314 at 178-181. This has been uncontrovertedMoreover, petitioner has again failed to show why the evidence, even if deemed false for argument's sake, would be consequential to the outcome of the case. Petitioner has failed to show that he was denied due process or was subjected to ineffective assistance of counsel.

### IV. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED** that petitioner's 28 U.S.C. §2255 petition [Doc. 364] be **denied**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the 18th day of January, 2013.

Signed By:

**J. Gregory Wehrman**

United States Magistrate Judge